**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

|  |  |
|---|---|
| AMERICAN ALLIANCE<br>FOR EQUAL RIGHTS,<br><br>    *Plaintiff*,<br><br>  *v.*<br><br>PERKINS COIE LLP,<br><br>    *Defendant*. | Case No. 3:23-CV-01877 |

**DEFENDANT PERKINS COIE'S OPPOSITION TO**
**PLAINTIFF AMERICAN ALLIANCE FOR EQUAL RIGHTS'**
<u>**MOTION FOR A PRELIMINARY INJUNCTION**</u>

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

BACKGROUND .................................................................................................................. 4

STANDARD OF REVIEW ................................................................................................. 7

ARGUMENT ....................................................................................................................... 8

I.      AAER Is Not Entitled To A Preliminary Injunction Because It Lacks Standing. ............... 8

     A.      Member A Does Not Have Standing In His Own Right ........................................ 9

          1.      Member A's conclusory statements fail to establish he satisfies the race-neutral requirements for the fellowships ........................................ 9

          2.      Member A's conclusory statements fail to establish his concrete intent to apply ....................................................................................... 13

     B.      AAER Cannot Claim Standing Based On Member A's Anonymous Declaration. ........................................................................................................ 15

     C.      AAER Has Not Shown It Is A Genuinely Member-Driven Organization ............ 16

     D.      Litigating AAER's Claim Requires Member A's Individual Participation. ...................................................................................................... 17

II.     AAER Is Not Entitled To A Preliminary Injunction Because The Challenged Fellowships No Longer Exist ........................................................................................ 19

III.    AAER Is Not Entitled To A Preliminary Injunction Because The Prior Fellowships Complied With Applicable Law ............................................................... 22

CONCLUSION .................................................................................................................. 25

# <u>TABLE OF AUTHORITIES</u>

<small>CASES</small>

*Abdallah v. Mesa Air Group, Inc.*, 79 F.4th 420 (5th Cir. 2023)....................................18

*Adarand Constructors, Inc. v. Pena*, 515 U.S. 200 (1995)..............................10, 14, 22

*Allen v. Wright*, 468 U.S. 737 (1984), *abrogated on other grounds by Lexmark International, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014) ..........................9

*American Alliance for Equal Rights v. Fearless Fund Management, LLC*, No. 23-CV-03424, 2023 WL 6295121 (N.D. Ga. Sept. 27, 2023) ......................................15

*Badaiki v. Schlumberger Holdings Corp.*, No. 4:20-CV-2216, 2021 WL 6010580 (S.D. Tex. Aug. 23, 2021), *report and recommendation adopted*, 2021 WL 5769276 (S.D. Tex. Dec. 6, 2021), *appeal docketed*, No. 22-20071 (5th Cir. Feb. 11, 2022) ..............................................................................................18

*Barber v. Bryant*, 860 F.3d 345 (5th Cir. 2017) ...........................................................8

*Carney v. Adams*, 141 S. Ct. 493 (2020) ................................................................9, 14

*Center for Biological Diversity v. United States EPA*, 937 F.3d 533 (5th Cir. 2019) .............................................................................................................8

*City of Austin v. Kinder Morgan Texas Pipeline, LLC*, 447 F. Supp. 3d 558 (W.D. Tex. 2020) ...........................................................................................................21

*Clark v. Prichard*, 812 F.2d 991 (5th Cir. 1987) ..........................................................7

*Coalition for Equity & Excellence in Maryland Higher Education v. Maryland Higher Education Commission*, 295 F. Supp. 3d 540 (D. Md. 2017) ....................22

*Comcast Corp. v. National Association of African American-Owned Media*, 140 S. Ct. 1009 (2020) ......................................................................................... 9-10, 18

*Concerned Citizens Around Murphy v. Murphy Oil USA, Inc.*, 686 F. Supp. 2d 663 (E.D. La. 2010) ....................................................................................................17

*Conlay v. Baylor College of Medicine*, No. H-08-CV-1038, 2010 WL 774162 (S.D. Tex. Mar. 3, 2010) ............................................................................................22

*Cornerstone Christian Schools v. University Interscholastic League*, 563 F.3d 127 (5th Cir. 2009)...............................................................................................17, 19

*Dallas Fire Fighters Ass'n v. City of Dallas*, 150 F.3d 438 (5th Cir. 1998) ................23

*Dallas Fire Fighters Ass'n v. City of Dallas*, 885 F. Supp. 915 (N.D. Tex. 1995) ......24

*de la O v. Housing Authority of City of El Paso*, 417 F.3d 495 (5th Cir. 2005)
   *abrogated on other grounds by Reagan National Advertising of Austin, Inc. v.
   City of Austin*, 972 F.3d 696 (5th Cir. 2020) ........................................................... 19

*Digital Generation, Inc. v. Boring*, 869 F. Supp. 2d 761 (N.D. Tex. 2012) ......................... 13, 17

*Do No Harm v. Pfizer Inc.*, 646 F. Supp. 3d 490 (S.D.N.Y. 2022), *appeal docketed*,
   No. 23-15 (2d Cir. Jan. 4, 2023) ................................................................. 9, 15, 16

*Doe v. Beaumont Independent School District*, 172 F.R.D. 215 (E.D. Tex. 1997) .................... 16

*Doe v. Kamehameha Schools/Bernice Pauahi Bishop Estate*, 470 F.3d 827 (9th Cir.
   2006) .......................................................................................................... 23

*Draper v. Healey*, 827 F.3d 1 (1st Cir. 2016) ..................................................................... 15

*Edmonson v. United States Steel Corp.*, 659 F.2d 582 (5th Cir. 1981) ................................. 23

*Edwards v. City of Houston*, 37 F.3d 1097 (5th Cir. 1994), *overruled on other
   grounds on reh'g en banc*, 78 F.3d 983 (5th Cir. 1996) ............................................ 24

*Eagle v. Vee Pak, Inc.*, 343 F.R.D. 552 (N.D. Ill. 2023) .................................................... 19

*Faculty, Alumni, & Students Opposed to Racial Preferences v. New York University
   Law Review*, No. 18-CV-9184, 2020 WL 1529311 (S.D.N.Y. Mar. 31, 2020),
   *aff'd sub nom. Faculty v. New York University*, 11 F.4th 68 (2d Cir. 2021), *cert.
   denied*, 142 S. Ct. 2813 (2022) ...................................................................... 9

*Faculty, Alumni, & Students Opposed to Racial Preferences v. Harvard Law
   Review Ass'n*, No. 18-CV-12105, 2019 WL 3754023 (D. Mass. Aug. 8, 2019) ............... 9

*Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S.
   167 (2000) .............................................................................................. 20

*Fund Democracy, LLC v. SEC*, 278 F.3d 21 (D.C. Cir. 2002) ......................................... 17

*Georgia Republican Party v. SEC*, 888 F.3d 1198 (11th Cir. 2018) .................................... 15

*Gipson v. JPMorgan Chase*, No. 13-CV-2477, 2013 WL 3746003 (N.D. Tex. July
   17, 2013) ................................................................................................. 7

*Golatt v. Perot Museum of Nature & Science*, No. 20-CV-03397-L, __ F. Supp. 3d
   __, 2023 WL 2354917 (N.D. Tex. Mar. 3, 2023) .............................................. 23

*Greer's Ranch Cafe v. Guzman*, 540 F. Supp. 3d 638 (N.D. Tex. 2021) ........................... 10

*Hancock County Board of Supervisors v. Ruhr*, 487 F. App'x 189 (5th Cir. 2012) ............. 16

*Hoang v. Microsemi Corp.*, No. 22-20004, 2023 WL 2346244 (5th Cir. Mar. 3, 2023) ........................................................................................................................23

*Hotze v. Hudspeth*, 16 F.4th 1121 (5th Cir. 2021) ..........................................................19

*Hoyt v. American National Insurance Co.*, No. 20-CV-545, 2021 WL 2823449 (N.D. Tex. July 6, 2021) ..............................................................................................18

*Humane Society of the United States v. Hodel*, 840 F.2d 45 (D.C. Cir. 1988) ..............16

*Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333 (1977) ..................8, 16

*Kovac v. Wray*, 363 F. Supp. 3d 721 (N.D. Tex. 2019) ............................................ 10-11

*League of Women Voters of United States v. Newby*, 838 F.3d 1 (D.C. Cir. 2016) ..................22

*Lowery v. Texas A&M University*, 22-CV-03091, 2023 WL 6445788 (S.D. Tex. Sept. 29, 2023), *appeal docketed*, No. 23-20481 (5th Cir. Oct. 4, 2023) ................................14

*Mississippi State Democratic Party v. Barbour*, 529 F.3d 538 (5th Cir. 2008) ..........................13

*National Federation of the Blind of Texas, Inc. v. Abbott*, 647 F.3d 202 (5th Cir. 2011) ..............................................................................................................................13

*Nichols v. Alcatel USA, Inc.*, 532 F.3d 364 (5th Cir. 2008) ......................................7, 8

*Northeastern Florida Chapter of Associated General Contractors of America v. City of Jacksonville*, 508 U.S. 656 (1993) ..................................................9, 10, 22

*Ondrusek v. United States Army Corps of Engineers*, No. 22-CV-1874, 2023 WL 2169908 (N.D. Tex. Feb. 22, 2023) ............................................................................17

*PCI Transportation, Inc. v. Fort Worth & Western Railroad Co.*, 418 F.3d 535 (5th Cir. 2005) ....................................................................................................................8, 16

*Preston v. Seterus, Inc.*, No. 12-CV-2395-L, 2012 WL 3848122 (N.D. Tex. Sept. 5, 2012) ............................................................................................................................8

*Setser v. Novack Investment Co.*, 657 F.2d 962 (8th Cir. 1981) ....................................23

*Sharkey v. Dixie Electric Membership Corp.*, 262 F. App'x 598 (5th Cir. 2008) ..................23, 25

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) ...................................................................9

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*, 143 S. Ct. 2141 (2023) ...........................................................................................1, 16, 20

*Students for Fair Admissions, Inc. v. University of Texas at Austin*, 37 F.4th 1078 (5th Cir. 2022) ....................................................................................................14, 16

*Summers v. Earth Island Institute*, 555 U.S. 488 (2009) ................................................15

*United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544 (1996) ...................................................................................................19

*United States v. Emerson*, 270 F.3d 203 (5th Cir. 2001), *abrogated on other grounds by United States v. Rahimi*, 59 F.4th 163 (5th Cir. 2023) .........................10

*United States v. Realty Multi-List, Inc.*, 629 F.2d 1351 (5th Cir. 1980) ......................21

*United Steelworkers of America, AFL-CIO-CLC v. Weber*, 443 U.S. 193 (1979) .................24, 25

*Warth v. Seldin*, 422 U.S. 490 (1975) ............................................................................9

S<small>TATUTES</small>

42 U.S.C. § 1981 ........................................................................................................2, 23

O<small>THER</small> A<small>UTHORITIES</small>

Complaint, *American Alliance for Equal Rights v. Fearless Fund Management, LLC*, No. 23-CV-03424 (N.D. Ga. Aug. 2, 2023), ECF No. 1 ...................................2

Complaint, *American Alliance for Equal Rights v. Morrison & Foerster LLP*, No. 23-CV-23189 (S.D. Fla. Aug. 22, 2023), ECF No. 1 .............................................2

Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction, *American Alliance for Equal Rights v. Fearless Fund Management, LLC*, No. 23-CV-03424 (N.D. Ga. Aug. 31, 2023), ECF No. 59 ......................................................15

*Report on Diversity in U.S. Law Firms*, National Association for Law Placement, Inc. (Jan. 2023), https://www.nalp.org/reportondiversity .........................................1

## <u>INTRODUCTION</u>

Perkins Coie is an international law firm with a proud history of promoting diversity and inclusion. The firm is committed to creating an environment where attorneys from different backgrounds and experiences can contribute and excel. Perkins Coie's commitment to diversity and inclusion helps it attract the best talent and provide the best advice for its clients. Consistent with these values, in 1991, Perkins Coie became one of the nation's first law firms to offer a diversity program for first-year law students. The initiative recruited a diverse group of students in their first year of law school to spend a summer at the firm. Building on decades of success, Perkins Coie launched a similar program for second-year law students in 2021. Together, Perkins Coie's 1L and 2L Diversity Fellowship Programs helped create and foster one of the strongest and most diverse talent pipelines in the legal profession. Many other firms have since sponsored similar programs to address the persistent underrepresentation of lawyers of color in their ranks; even as of last year, 80% of attorneys at U.S. law firms were white.[1]

Although diversity fellowships have been commonplace in the legal profession for decades, in the wake of the Supreme Court's decision on race-conscious admissions in *Students for Fair Admissions, Inc. (SFFA) v. President & Fellows of Harvard College*, 143 S. Ct. 2141 (2023), Perkins Coie undertook a review of its diversity initiatives. That review was consistent with the firm's approach of evolving its diversity and inclusion efforts to align with the firm's needs and the competitive and legal landscape. While that review was underway, and before Perkins Coie began accepting fellowship applications from 1Ls for the summer of 2024, the American Alliance for Equal Rights ("AAER") filed a lawsuit challenging Perkins Coie's

---

[1] *See Report on Diversity in U.S. Law Firms*, National Association for Law Placement, Inc. (Jan. 2023), https://www.nalp.org/reportondiversity.

fellowship programs as racially discriminatory. AAER alleged that the programs violate 42 U.S.C. § 1981, a statute enacted in 1866 to ensure that formerly enslaved people received the same rights to make and enforce contracts "as is enjoyed by white citizens." AAER then moved for a preliminary injunction against the fellowship programs based on its claim that an anonymous purported member of its organization, "Member A," would suffer irreparable harm without that drastic relief. This Court should deny AAER's motion for extraordinary relief for three reasons.

*First*, AAER cannot make the required "clear showing" that it has standing. Founded by activist Edward Blum for the avowed purpose of dismantling diversity programs, AAER has filed a series of lawsuits in courts around the country without naming a *single* person supposedly harmed by the challenged programs.[2] This case is no exception. It rests on the conclusory allegations of one unnamed first-year law student—Member A—who claims he meets all the eligibility requirements but for the fact that he is "heterosexual, white, and not disabled." Dkt. 7 ("Mot."), Ex. G ¶ 2. But Member A fails to meet the race-neutral criteria for the fellowships he attacks. AAER's minimal efforts to prove otherwise feature a sworn statement from Member A insisting he "meet[s] all the eligibility requirements set by *Morrison*"—a reference to a *different* law firm AAER sued over its fellowship program at the same time it sued Perkins Coie. *Id.* (emphasis supplied). Beyond the shortcomings in Member A's standing, AAER cannot show it is a genuine member-driven organization as opposed to one man's anti-affirmative action crusade, nor that its claim can be litigated without Member A's active participation. In light of these problems, AAER lacks standing. That, alone, is grounds to deny its motion for a preliminary injunction.

---

[2] *See* Compl., *Am. All. for Equal Rights v. Fearless Fund Mgmt., LLC*, No. 23-CV-03424 (N.D. Ga. Aug. 2, 2023), ECF No. 1; Compl., *Am. All. for Equal Rights v. Morrison & Foerster LLP*, No. 23-CV-23189 (S.D. Fla. Aug. 22, 2023), ECF No. 1.

*Second*, Perkins Coie has fundamentally changed the fellowship programs challenged here, rendering AAER's case moot and its arguments about irreparable harm baseless. The firm commenced a review of these programs before AAER filed suit. That review culminated in a decision by the firm's leadership last month to replace the 1L and 2L diversity fellowships and eliminate the challenged requirement that participants belong to a group historically underrepresented in the legal profession. Ex. 2, Declaration of William G. Malley ("Malley Decl.") ¶¶ 8-14, App. 6-7; *compare* Mot., Ex. B at 1 & Ex. C at 1, *with* Ex. 3, Diversity & Inclusion Fellowship Program Description ("Program Description") at 1-2, App. 9-10. The new Diversity & Inclusion Fellowship Program is open to all applicants, regardless of race. Applicants are not asked or required to identify their race when applying. Since the new fellowship program does not contain the very requirement AAER seeks to enjoin, there is no live dispute. While AAER may argue that the voluntary-cessation exception to mootness applies here, the circumstances surrounding this change belie any argument that Perkins Coie will revert to the allegedly discriminatory criterion. At a minimum, AAER cannot demonstrate irreparable harm from a program that no longer exists. There is simply nothing for the Court to enjoin.

*Third*, even if the Court were to consider AAER's likelihood of proving that the prior fellowship criteria violated § 1981, AAER still is not entitled to relief, temporary or otherwise. AAER ignores decades of precedent allowing an employer like Perkins Coie to engage in voluntary affirmative action, using race in a targeted fashion to address a manifest racial imbalance. That is precisely what Perkins Coie did: like many large law firms, it sought to remove the barriers that caused lawyers of color to remain underrepresented in its ranks. AAER might wish the law did not permit affirmative action programs, but its ideological disagreement with binding precedent cannot justify the extraordinary relief it seeks.

## BACKGROUND

Perkins Coie is a leading international law firm with over 1,200 lawyers in 20 offices across the United States and Asia. Malley Decl. ¶ 2, App. 5. "Perkins Coie has a proud history of promoting diversity and inclusion as core values and strategic imperatives, striving for a diverse and inclusive community where opportunities to succeed are available to all." Ex. 4, Declaration of Genhi Givings Bailey ("Bailey Decl.") ¶ 3, App. 13. Attracting diverse legal talent to Perkins Coie starts with the firm's summer associate program. *Id*. ¶ 4, App. 13-14. Like other firms, Perkins Coie welcomes law students each summer to experience private practice and learn from trained attorneys. *Id*. Following a review of their work product, many of these students are offered positions to rejoin the firm after graduation as associates. *Id*. ¶ 9, App. 15. The summer associate program is central to the firm's recruitment efforts, so diversity and inclusion within that program are paramount. *Id*. ¶ 4, App. 13.

In 1991, Perkins Coie launched a diversity program for summer associates aimed at addressing the persistent underrepresentation of lawyers of color. *Id*. ¶¶ 8-9, App. 15. The program was open to first-year law students, and it offered them a paid summer associate position at the end of their first year. *Id*. ¶¶ 4, 8, 12, App. 13-15. Many leading firms developed similar programs, working together to dismantle barriers that had shut out members of historically underrepresented groups. *Id*. ¶ 13, App. 16. Building on decades of progress, Perkins Coie decided to expand its fellowship program in 2021 to second-year law students. *Id*. ¶ 10, App. 15. In recent years, Perkins Coie's 1L and 2L diversity fellows received an additional stipend, both at the end of the summer and if they returned after graduation for full-time employment at the firm. *Id*. ¶ 12, App. 15-16.

Perkins Coie selected its diversity fellows through a rigorous evaluative process. Ex. 5, Declaration of Katharine N. Monin ("Monin Decl.") ¶¶ 7, 10, App. 20-21. 1L applicants were

required to submit a resume, cover letter, and writing sample, as well as a personal statement that detailed "the student's unique personal history and commitment to advancing diversity, equity, and inclusion within the community and legal profession." *Id*. ¶ 12, App. 21. Although a first-year student could apply for the 1L fellowship before receiving law school grades, applications were generally not considered complete until grades were submitted. *Id*. ¶ 15, App. 22. Perkins Coie carefully reviewed the applicants to identify qualified individuals studying at ABA-accredited law schools who:

- had a "[d]emonstrated record of academic achievement and excellent writing and interpersonal skills," and "experience that will contribute to a successful career in the legal field";

- had "a history of meaningful contributions to the diversity efforts of the student's law school and a strong desire to continue supporting diversity, equity, and inclusion efforts upon entering the legal profession"; and

- were members "in a group historically underrepresented in the legal profession, including students of color, students who identify as LGBTQ+, and students with disabilities."

Mot., Ex. B at 1; *see also* Monin Decl. ¶ 11, App. 21. A select group of applicants then received invitations to interview with lawyers at the firm. Monin Decl. ¶ 17, App. 22. Finally, the firm considered each office's unique needs for its various practice areas. *Id*. ¶ 8, App. 20. For example, the firm focused on applicants with a background well-suited to corporate work if an office's corporate group anticipated a specific hiring need. *Id*. As for the 2L program, fellows included both (1) students invited to return after the successful completion of the 1L program, and (2) students offered positions for the first time through the 2L summer associate recruitment process. *Id*. ¶ 6, App. 20.

The fellowships were fiercely competitive. In 2023, Perkins Coie received approximately 1,400 applications for 20 available 1L fellowships, an acceptance rate of less than 1.5%. *Id*. ¶ 7, App. 20. For the Dallas office—which, with 33 attorneys, is one of the firm's smallest—Perkins

Coie selected a single 1L diversity fellow in 2022 and again a single fellow in 2023. *Id*. ¶ 9, App. 21. The fellows selected by the firm boasted exceptional credentials that far exceeded the minimum eligibility criteria, including stellar academic credentials from college and leadership roles on campus, among other examples. *Id*. ¶ 13, App. 21-22.

When AAER filed suit in August challenging these fellowships under § 1981, the programs were about to change. As part of its commitment to diversity and inclusion, Perkins Coie updates and refines its initiatives to align with the firm's needs and address the competitive and legal environment. Bailey Decl. ¶ 15, App. 16. As the firm's Managing Partner put it before this suit was filed, the firm's commitment to diversity and inclusion "remain[s] steadfast," but its "methods for fulfilling that commitment may evolve over time as the legal landscape changes." Malley Decl. ¶ 8, App. 6.

That landscape shifted earlier this year with the Supreme Court's decision in *SFFA v. Harvard*. After that decision, Perkins Coie undertook a review of its diversity and inclusion programs. Malley Decl. ¶¶ 8-9, App. 6. Its review culminated in a decision by the firm's leadership last month to replace the 1L and 2L Diversity Fellowship Programs with a single, new Diversity & Inclusion Fellowship Program, which will be open to all first-year law students regardless of race and will seek qualified applicants who demonstrate academic achievement; leadership in diversity, equity, and inclusion work; resilience; and perspective shaped by different life experiences. *Id*. ¶¶ 10-12, App. 6; Bailey Decl. ¶¶ 15-17, App. 16-17; *see also* Program Description at 1-2, App. 9-10.

The purpose of the new program is to expand the pool of potential applicants, as Perkins Coie recognizes that a more inclusive pool will only increase the firm's diversity. As the new criteria state:

> Perkins Coie is an Equal Opportunity Employer and welcomes applications for the Diversity & Inclusion Fellowship Program from all eligible applicants regardless of race, color, religion, sex, age, national origin, veteran status, sexual orientation, gender identity / gender expression, disability status, or any other identity.

Program Description at 1, App. 9; *see also* Malley Decl. ¶ 13, App. 7. In other words, the selection criterion challenged by AAER—that an applicant possess "[m]embership in a group historically underrepresented in the legal profession, including students of color, students who identify as LGBTQ+, and students with disabilities," Mot., Ex. B at 1—no longer exists. The program is now open to all, and race is not a factor in evaluating applicants. Experiences and perspectives related to a candidate's race may be considered, but only to the extent contemplated by the Supreme Court's decision in *SFFA v. Harvard*. Malley Decl. ¶ 15, App. 7; Bailey Decl. ¶ 17, App. 17. Perkins Coie has no intention of reverting to the prior requirement that an applicant be a member of a historically underrepresented group. Malley Decl. ¶ 14, App. 7.

## STANDARD OF REVIEW

The remedy AAER seeks is "extraordinary," *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 372 (5th Cir. 2008), and imposes on AAER a heavy burden to establish: (1) a substantial likelihood that it will prevail on the merits; (2) a substantial threat that irreparable harm will result if the injunction is not granted; (3) that the threatened injury outweighs the threatened harm to Perkins Coie; and (4) that the injunction is in the public interest. *Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987) (citing *Canal Auth. of Fla. v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974) (en banc)). "[I]f [AAER] fails to meet any of the four requirements, the court cannot grant the … preliminary injunction." *Gipson v. JPMorgan Chase*, No. 13-CV-2477, 2013 WL 3746003, at *1 (N.D. Tex. July 17, 2013) (Lindsay, J.). Even if AAER meets all four requirements, "the decision whether to grant or deny a preliminary injunction remains discretionary with the court, and the decision to grant a preliminary injunction is treated as the exception rather than the rule." *Id.* at *2.

Mere allegations and "unsupported conclusory statements" are not enough to justify a preliminary injunction. *Preston v. Seterus, Inc.*, No. 12-CV-2395-L, 2012 WL 3848122, at *3 (N.D. Tex. Sept. 5, 2012) (Lindsay, J.). Courts require evidence. *PCI Transp., Inc. v. Fort Worth & W. R.R. Co.*, 418 F.3d 535, 546 (5th Cir. 2005) (affirming denial of preliminary injunctive relief where plaintiff failed to introduce "sufficient evidence to justify the grant of a preliminary injunction"). After weighing the evidence, a court may grant a preliminary injunction if and only if "the plaintiff[] ha[s] *clearly* carried the burden of persuasion on all four requirements." *Nichols*, 532 F.3d at 372 (emphasis supplied) (quotation marks omitted).

## ARGUMENT

## I.      AAER Is Not Entitled To A Preliminary Injunction Because It Lacks Standing.

To obtain a preliminary injunction, AAER must "make a clear showing that [it has] standing." *Barber v. Bryant*, 860 F.3d 345, 352 (5th Cir. 2017) (internal quotation marks omitted). AAER does not purport to vindicate an injury to itself; it asserts standing solely in an associational capacity on behalf of one unidentified first-year law student, "Member A." Compl. ¶ 7; Dkt. 8 ("Br.") 1; Mot., Ex. F ¶ 5. AAER therefore must present evidence establishing a substantial likelihood that: (1) Member A has standing in his own right; (2) AAER is a representative organization with indicia of membership and a purpose germane to this litigation; and (3) neither the claim asserted nor the relief requested requires Member A's individual participation. *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977); *see also Ctr. for Biological Diversity v. U.S. EPA*, 937 F.3d 533, 536 (5th Cir. 2019). Just as in similar lawsuits brought by

other purported membership organizations challenging diversity programs, AAER satisfies none of these requirements.[3]

### A.    Member A Does Not Have Standing In His Own Right.

Standing demands a "personal stake in the outcome of the controversy," *Warth v. Seldin*, 422 U.S. 490, 498 (1975), created by: (1) an injury in fact—that is, an actual or imminent invasion of a concrete, particularized, and legally-protected interest; (2) that is fairly traceable to the challenged conduct of the defendant; and (3) that is likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). In this context, Member A also must establish he is "ready and able" to apply for the challenged fellowships and has an actual desire to be selected. *Carney v. Adams*, 141 S. Ct. 493, 499-500 (2020) (citing *Gratz v. Bollinger*, 539 U.S. 244, 262 (2003); *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993)). Member A's conclusory statements fall far short of meeting this burden, and the evidence presented by Perkins Coie confirms Member A's lack of standing.

### 1.    Member A's conclusory statements fail to establish he satisfies the race-neutral requirements for the fellowships.

Member A must do more than complain that a racial classification is illegal. *Allen v. Wright*, 468 U.S. 737, 755 (1984), *abrogated on other grounds by Lexmark International, Inc. v. Static Control Components*, Inc., 572 U.S. 118 (2014). He must establish a particularized denial of equal treatment: that he was able, ready, and qualified to compete for the fellowships but deprived of the opportunity to do so because of his race. *See Comcast Corp. v. Nat'l Ass'n of Afr.*

---

[3] *See, e.g.*, *Do No Harm v. Pfizer Inc.*, 646 F. Supp. 3d 490, 507-08 (S.D.N.Y. 2022), *appeal docketed*, No. 23-15 (2d Cir. Jan. 4, 2023); *Fac., Alumni, & Students Opposed to Racial Preferences (FASORP) v. N.Y. L. Rev.*, No. 18-CV-9184, 2020 WL 1529311, at *6 (S.D.N.Y. Mar. 31, 2020), *aff'd sub nom. Fac. v. N.Y. Univ.*, 11 F.4th 68 (2d Cir. 2021), *cert. denied*, 142 S. Ct. 2813 (2022); *FASORP v. Harvard L. Rev. Ass'n*, No. 18-CV-12105, 2019 WL 3754023, at *5-8 (D. Mass. Aug. 8, 2019).

*Am.-Owned Media*, 140 S. Ct. 1009, 1014 (2020) (holding that § 1981 requires a plaintiff to "demonstrate that, but for the defendant's unlawful conduct, its alleged injury would not have occurred"). In the context of competitive opportunities such as the fellowships, Member A must show a substantial likelihood he meets all the eligibility requirements of the program except for the one he challenges as discriminatory. *Greer's Ranch Cafe v. Guzman*, 540 F. Supp. 3d 638, 646 (N.D. Tex. 2021).[4]

Even without the challenged factor, Member A would not be qualified for the two now-replaced fellowships AAER seeks to enjoin. Member A is categorically ineligible for a 2L program: he just started his first year of law school, so he could not even *apply* for the 2L fellowship this year. Any claim that Member A would satisfy selection criteria next year is speculative, hypothetical, and dependent on future events, including his future academic performance. That remoteness defeats his standing. *United States v. Emerson*, 270 F.3d 203, 262 (5th Cir. 2001) (citing 9 C. Wright & A. Miller, *Federal Practice & Procedure* § 2948.1 at 153-56 (2d ed.)), *abrogated on other grounds by United States v. Rahimi*, 59 F.4th 163 (5th Cir. 2023). And, at a minimum, his challenge to the 2L program is not ripe. *See Kovac v. Wray*, 363 F. Supp.

---

[4] The cases cited by AAER for the proposition that "[t]he injury in cases of this kind is that a discriminatory classification prevents the plaintiff from competing on an equal footing" were all brought under the Equal Protection Clause, challenging a government-erected barrier to the plaintiff's ability to compete. Br. 7 (quoting *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 211 (1995)). That reasoning makes sense in the equal protection context: "When the government erects a barrier that makes it more difficult for members of one group to obtain a benefit than it is for members of another group, … [t]he 'injury in fact' … is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit." *Gen. Contractors of Am.*, 508 U.S. at 666. But that reasoning does not extend to claims under § 1981, where the alleged discrimination is wholly private, and the specific aim of the statute is to eradicate race discrimination in contractual relationships. *Comcast*'s but-for requirement for § 1981 claims reflects this important distinction. *See infra* at 18-19.

3d 721, 745 (N.D. Tex. 2019) (Lindsay, J.) ("A claim is not ripe if it 'rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.'" (citation omitted)).

As for the now-replaced 1L fellowship, Member A has not met his burden of establishing he was qualified but for his race. The 1L program was fiercely competitive and highly selective; top candidates "far exceeded the minimum eligibility criteria—for instance, they attended top law schools, held leadership roles on campus, and had impressive work experience." Monin Decl. ¶ 13, App. 21-22; *see also id.* ¶¶ 7, 10, App. 20-21. Member A's cursory declaration cannot establish that he would have satisfied those race-neutral requirements:

**Personal statement.** Perkins Coie required applicants to submit a personal statement describing their "unique personal history and commitment to advancing diversity, equity, and inclusion within their community and legal profession." Mot., Ex. B at 1; *see also* Monin Decl. ¶ 12, App. 21. Competitive statements eloquently articulated a compelling personal story. Monin Decl. ¶ 16, App. 22. Member A does not claim that he has written such a personal statement, nor does he describe what his personal statement would articulate. He says only that as part of his prior job as a paralegal, he "assist[ed] immigrants and a national nonprofit assisting religious minorities," and "worked closely with clients and colleagues of all backgrounds." Mot., Ex. G ¶ 5. Beyond these *two sentences*, he provides no evidence or detail as to how his paid job contributed to advancing the fellowship's goals, or how his own personal experience is uniquely compelling. Likewise, the only activities he identifies from his undergraduate years—a fraternity and a debating society—do not on their face reflect any special commitment to diversity or inclusion, and Member A provides no further explanation as to why they do. Member A's purported qualifications come nowhere close to the qualifications of prior fellows.

*History of commitment to diversity.* Perkins Coie also required "[a] history of meaningful contributions to the diversity efforts of" the student's law school, as well as "a strong desire to continue supporting diversity, equity, and inclusion efforts upon entering the legal profession." Mot., Ex. B at 1; *see also* Monin Decl. ¶ 11, App. 21. Member A all but concedes he does not meet those criteria. He claims his experiences "set [him] up to meaningfully contribute to the diversity efforts of [his] law school" in the *future*, while identifying no such contributions to date. Mot., Ex. G ¶¶ 5-6. This bare statement stands in stark contrast to the diversity contributions of 1L students who were awarded fellowships in recent years: they served as leaders of diversity-focused organizations, organized major affinity group conferences, worked as trained mediators to facilitate divisive community conversations, and organized law school events on diversity issues. Monin Decl. ¶ 19, App. 22-23. Member A likewise fails to substantiate a desire to support diversity, equity, and inclusion efforts within the legal profession.

*Academic performance.* A "[d]emonstrated record of academic achievement" was also a key requirement of the fellowship. Mot., Ex. B at 1; *see also* Monin Decl. ¶ 11, App. 21. This requirement covered law school performance, with grades playing an important role in selection. Monin Decl. ¶¶ 14-15, App. 22. In addition, Perkins Coie considered the applicant's undergraduate institution, GPA, honors received, and major. *Id.* ¶ 14, App. 22. As of this filing, Member A has not yet completed his first semester of law school, much less received the grades that determine whether he would be seriously considered for the fellowship. Nor has he provided sufficient information about his academic record to show he would have compared favorably to prior fellows. Member A says only "[i]n college, [he] maintained a high GPA while holding leadership positions in [his] fraternity and a debating society." Mot., Ex. G ¶ 5. Even if Member A has refused to identify himself, he could have provided a redacted transcript showing his grades and GPA,

identified his major, and/or listed any honors he received. His failure to do any of this speaks volumes. *See, e.g.*, *Digital Generation, Inc. v. Boring*, 869 F. Supp. 2d 761, 777 (N.D. Tex. 2012) (Lindsay, J.) (denying preliminary injunction where request was "based on assumptions not supported by the evidence"). At the very least, his refusal or inability to provide relevant academic information undermines AAER's demand for relief now.

### 2. Member A's conclusory statements fail to establish his concrete intent to apply.

Member A has likewise failed to substantiate a genuine interest in the diversity fellowships at Perkins Coie. To meet this requirement, the law demands evidentiary support evincing a "firm intention" to seek and accept the position at issue. *Miss. State Democratic Party v. Barbour*, 529 F.3d 538, 545 (5th Cir. 2008); *see also, e.g.*, *Nat'l Fed'n of the Blind of Tex., Inc. v. Abbott*, 647 F.3d 202, 209 (5th Cir. 2011) (claim that plaintiffs were "seriously interested in engaging in a course of conduct affected" by the challenged legislation was insufficient to establish standing absent "evidence to show that they intend to … engage in [covered] activity" (quotation marks omitted)). Member A purportedly belongs to an organization dedicated to *dismantling* diversity, equity, and inclusion programs. In addition, the fact that Member A could not even name the correct law firm on the first page of his sworn declaration confirms that his claimed interest in Perkins Coie is less than sincere.

The generalities in Member A's declaration likewise undermine his claimed interest. He states: "I would like to apply," "I am interested in applying," and "I would assemble and promptly submit all the requested application materials." Mot., Ex. G ¶¶ 2, 7, 12. In *Carney*, the Supreme Court held that a similarly conclusory statement by a plaintiff—"I would apply"—failed to demonstrate his concrete intent to apply for the judgeship at issue; he identified no "prior judgeship applications," no "prior relevant conversations" about the judgeship, and no "efforts to determine

likely openings." 141 S. Ct. at 499-502. The same is true of Member A. His conclusory statements are nothing like the evidence that demonstrated standing in *Adarand Constructors, Inc. v. Pena*, where the plaintiff had actually "bid[ ] on every guardrail project in Colorado," 515 U.S. 200, 212 (1995), or *SFFA v. University of Texas at Austin*, where the organization's members had actually "applied to UT but were not admitted" and remained "ready and able to apply to transfer," 37 F.4th 1078, 1086 (5th Cir. 2022); *see also Lowery v. Texas A&M University*, No. 22-CV-03091, 2023 WL 6445788, at *3-4 (S.D. Tex. Sept. 29, 2023*)* (dismissing challenge to faculty hiring program where plaintiff had not applied to the program), *appeal docketed*, No. 23-20481 (5th Cir. Oct. 4, 2023).

Even if Member A could show a general interest in applying for diversity fellowships, that is not the same as demonstrating a particular interest in Perkins Coie or its Dallas office specifically. Member A claims Perkins Coie could provide him with "great professional opportunities," "connections," and "mentors," yet he does not mention *anything* that makes Perkins Coie more attractive to him than the myriad other law firms with Dallas offices. Mot., Ex. G ¶¶ 7-9. Moreover, the generic attributes he does cite are shared by many summer associate positions open to first-year law students at other firms (including other fellowships, *see* Bailey Decl. ¶¶ 4, 13, App. 13-14, 16)—and Member A asserts no interest in those programs. As for his purported interest in the Dallas office, Member A says only he "enjoys visiting Texas" and "has friends who endorse living there." Compl. ¶ 37; Mot., Ex. G ¶ 8. These generic claims, which could be made about essentially any city, are a far cry from the compelling personal and professional reasons successful applicants have provided in the past in support of their desire to be in particular offices. Monin Decl. ¶¶ 8 & n.2, 18, App. 20, 22. Together, these shortcomings in Member A's narrative demonstrate "a generalized grievance against [Perkins Coie's] alleged

affirmative action efforts, not an actual desire by [Member A] to apply to the Fellowship and work at [Perkins Coie]." *Do No Harm v. Pfizer Inc*., 646 F. Supp. 3d 490, 507 (S.D.N.Y. 2022), *appeal docketed*, No. 23-15 (2d Cir. Jan. 4, 2023).

**B.      AAER Cannot Claim Standing Based On Member A's Anonymous Declaration.**

Member A falls short not only because his statements are conclusory but also because he is anonymous. Organizations like AAER must "make specific allegations establishing that at least one *identified* member had suffered or would suffer harm." *Summers v. Earth Island Inst.*, 555 U.S. 488, 497-98 (2009) (emphasis supplied); *see, e.g*., *Ga. Republican Party v. SEC*, 888 F.3d 1198, 1204 (11th Cir. 2018); *Draper v. Healey*, 827 F.3d 1, 3 (1st Cir. 2016). It is not enough to say that such a member exists; the association must actually "*name* the individuals." *Summers*, 555 U.S. at 498 (citing *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 235 (1990)) (emphasis supplied); *contra Am. All. for Equal Rights v. Fearless Fund Mgmt., LLC*, No. 23-CV-03424, 2023 WL 6295121, at *2-3 (N.D. Ga. Sept. 27, 2023).[5]

This requirement can be dispensed with only if "*all* the members of the organization are affected by the challenged activity." 555 U.S. at 498-99. AAER does not qualify for that limited exception. It admits that only "some" of its members are law students. Mot., Ex. F ¶ 4. The *Fearless Fund* litigation confirms as much; there, AAER purports to represent an entirely different

---

[5] The defendants in *Fearless Fund* did not challenge AAER's members' standing in their own right, including whether they had suffered a concrete injury. *See* Defs.' Opp'n to Pl.'s Mot. for Prelim. Inj. at 8-14, *Am. All. for Equal Rights v. Fearless Fund Mgmt., LLC*, No. 23-CV-03424 (N.D. Ga. Aug. 31, 2023), ECF No. 59. Thus, even if the *Fearless Fund* court were correct that AAER satisfied the other requirements of associational standing (a conclusion with which Perkins Coie disagrees for the reasons stated here), that court's finding does not mean that AAER has met its standing burden here.

set of members—small business owners—who plainly are not eligible for a law student fellowship. Without any identified member, AAER cannot meet its standing burden.[6]

AAER's attempt to sidestep this requirement is unavailing. AAER's president says he "ha[s] witnessed firsthand the retaliation that individuals can receive for bringing litigation challenging racial preferences." Mot., Ex. F ¶ 7. But "this type of 'it has happened before, therefore it *might* happen here' argument" is "insufficient to justify" concealment of a plaintiff's identity. *Doe v. Beaumont Indep. Sch. Dist.*, 172 F.R.D. 215, 217 (E.D. Tex. 1997). While "individuals may wish not to publicize their identities," that desire does not relieve "the burden of establishing the Court's Article III power to adjudicate its case." *Pfizer*, 646 F. Supp. 3d at 504.

## C.    AAER Has Not Shown It Is A Genuinely Member-Driven Organization.

AAER must establish that this litigation relates to its core purpose as a genuine membership organization, such that it is the type of association permitted to bring suit on behalf of its members. *Hunt*, 432 U.S. at 344-45. This requirement "prevent[s] associations from being merely law firms with standing." *Humane Soc'y of the U.S. v. Hodel*, 840 F.2d 45, 58 (D.C. Cir. 1988). Indicia of membership may include members voluntarily joining the organization to support its mission and regularly receiving updates about the status of a case. *SFFA v. Harvard*, 143 S. Ct. at 2158-59. They may also include the organization's members electing its leadership and paying dues that finance its activities. *See Hunt*, 432 U.S. at 344-45; *SFFA v. Univ. of Tex.*, 37 F.4th at 1084-85. But where an organization "is steered entirely by [one person]" and "does not claim to receive funding from its purported members," courts reject associational standing because the organization

---

[6] The non-precedential decision in *Hancock County Board of Supervisors v. Ruhr*, 487 F. App'x 189 (5th Cir. 2012) is not to the contrary. It noted only that the court was "aware of no precedent holding that an association must set forth the name of a particular member in its complaint in order to survive a Rule 12(b)(1) motion to dismiss." *Id.* at 198. A plaintiff's burden on a preliminary injunction motion is far more demanding than under Rule 12, *see PCI Transportation*, 418 F.3d at 546, rendering *Hancock* inapposite.

"may have reasons for instituting suit other than to assert the rights of these alleged supporters." *Fund Democracy, LLC v. SEC*, 278 F.3d 21, 26 (D.C. Cir. 2002).

AAER did not demonstrate the indicia of membership necessary for standing here. Its sparse website does not reflect a member-driven organization. In fact, it includes only the same cursory sentence about the organization's purpose that appears in AAER's president's declaration, together with his personal contact information. Ex. 6, Screenshot of AAER Website at 1, App. 25. It lacks any information about how to become a member or the rights or responsibilities of membership, and it says nothing about dues, meetings, or activities. *Contrast with Concerned Citizens Around Murphy v. Murphy Oil USA, Inc.*, 686 F. Supp. 2d 663, 674 (E.D. La. 2010) (finding standing based on the plaintiff's "actively updated website," which "document[ed] [its] various concerns and activities"). Neither the website nor Blum's declaration identifies AAER's governing body, finances, or other relevant details.

AAER is free to operate in secrecy, but it cannot expect this Court to grant extraordinary and immediate relief while disclosing nothing about its members or operations. Nor can it disclose such information for the first time in conjunction with a reply brief; that is too little, too late. *See Digital Generation, Inc.*, 869 F. Supp. 2d at 782-83 (declining to consider supplemental declarations in support of preliminary injunction); *Ondrusek v. U.S. Army Corps of Eng'rs*, No. 22-CV-1874, 2023 WL 2169908, at *3-4 (N.D. Tex. Feb. 22, 2023) (explaining "it is generally considered improper for a party to introduce new evidence at the reply stage of a motion proceeding" (citing Local Civ. R. 7.2(e) and collecting cases)).

> **D.    Litigating AAER's Claim Requires Member A's Individual Participation.**

AAER also fails to establish the final requirement for associational standing: that litigating its claim does not require Member A's participation in the lawsuit. *Cornerstone Christian Schs. v. Univ. Interscholastic League*, 563 F.3d 127, 134 n.5 (5th Cir. 2009). A race-discrimination claim

under § 1981 is a paradigmatic example of a lawsuit in which an aggrieved individual is better situated to bring the claim than a membership organization.

The claim asserted here depends on facts specific to Member A because a plaintiff alleging discrimination under § 1981, like a plaintiff alleging a violation of Title VII, must prove: (1) he is a member of a protected class; (2) the defendant intended to discriminate on the basis of that protected class; and (3) the discrimination concerned an activity enumerated in the statute, here, the right to make a contract. *Abdallah v. Mesa Air Grp., Inc*., 79 F.4th 420, 428 & n.5 (5th Cir. Aug. 16, 2023). A § 1981 claim also requires but-for causation, meaning Member A must demonstrate that "but for race, [he] would not have suffered the loss of a legally protected right." *Hoyt v. Am. Nat'l Ins. Co*., No. 20-CV-545, 2021 WL 2823449, at *5 (N.D. Tex. July 6, 2021) (Lindsay, J.) (alteration in original) (quoting *Comcast*, 140 S. Ct. at 1019). Put another way, has AAER shown a substantial likelihood that Member A would have been a competitive candidate for the fellowships if his race were different? *See Abdallah*, 79 F.4th at 429 ("[A] but-for test directs us to change one thing at a time and see if the outcome changes. If it does, we have found a but-for cause." (quoting *Bostock v. Clayton County*, 140 S. Ct. 1731, 1739 (2020)). He has not.

For one, Member A's conclusory statements in his declaration that he satisfies all eligibility requirements "lack the specificity required to meet his 'but for' pleading burden" under *Comcast*, let alone his burden in seeking a preliminary injunction. *Badaiki v. Schlumberger Holdings Corp*., No. 4:20-CV-2216, 2021 WL 6010580, at *5 (S.D. Tex. Aug. 23, 2021), *report and recommendation adopted*, No. 20-CV-02216, 2021 WL 5769276 (S.D. Tex. Dec. 6, 2021), *appeal docketed*, No. 22-20071 (5th Cir. Feb. 11, 2022). But even if this Court were to entertain Member A's unsubstantiated claims about his qualifications, the exercise underscores how fact-dependent and plaintiff-specific the analysis is. *Comcast Corp.*, 140 S. Ct. 1009 at 1019. This is particularly

18

true here, where the fellowship programs were competitive and required real and specific qualifications. *Contrast with Eagle v. Vee Pak, Inc.*, 343 F.R.D. 552, 571-72 (N.D. Ill. 2023) (certifying class, despite need to consider but-for causation after *Comcast*, because the position was for unskilled workers, requiring no experience or qualifications, and thus causation would "rise and fall with proof of a common policy"). Member A is required to establish he is a viable and competitive candidate for the fellowship. He is in a far better position to litigate that point than AAER.

It is no answer that "individual participation is not normally necessary when an association seeks prospective or injunctive relief for its members," as AAER does here. *United Food & Com. Workers Union Loc. 751 v. Brown Gr., Inc.*, 517 U.S. 544, 546 (1996) (citation omitted). Individual participation is required "unless *neither* the claim asserted *nor* the relief requested requires the participation of individual members in the lawsuit." *Cornerstone Christian Schs.*, 563 F.3d at 134 n.5 (emphasis supplied) (internal quotation marks omitted). For all the reasons above, this § 1981 claim plainly requires Member A's participation and thus defeats associational standing for AAER.

## II.    AAER Is Not Entitled To A Preliminary Injunction Because The Challenged Fellowships No Longer Exist.

AAER's lack of standing is reason enough to deny the preliminary injunction. But AAER also seeks to enjoin fellowships that no longer exist, rendering its claim moot and its arguments about irreparable harm unavailing.

At the outset, a preliminary injunction is not warranted because AAER's challenge is moot. *Hotze v. Hudspeth*, 16 F.4th 1121, 1124 (5th Cir. 2021). Where, as here, there is nothing left to enjoin, a preliminary injunction would amount to an impermissible advisory opinion. *See de la O v. Hous. Auth. of City of El Paso*, 417 F.3d 495, 499 (5th Cir. 2005), *abrogated on other grounds*

*by Reagan Nat'l Advertising, Inc. v. City of Austin*, 972 F.3d 696 (5th Cir. 2020). Perkins Coie replaced the two challenged diversity fellowships with a single, new, race-neutral one. *See supra* at 6-7. The firm did so as part of a review of its diversity initiatives in response to the *SFFA v. Harvard* decision. Malley Decl. ¶¶ 8-9, App. 6. The firm's review was ongoing when this lawsuit was filed, and it culminated last month when the prior (and challenged) diversity fellowships were replaced by the new Diversity & Inclusion Fellowship Program. *Id.* ¶¶ 9-12, App. 6. That program is open to all first-year law students regardless of race and thus eliminates the criterion that AAER had challenged through its lawsuit. *See* Program Description at 1-2, App. 9-10. Perkins Coie does not ask applicants their race, nor does it consider that information when assessing the four factors used to evaluate applications. Bailey Decl. ¶¶ 15-17, App. 16-17. Experiences and perspectives related to a candidate's race may be considered, but only to the extent contemplated by the Supreme Court's decision in *SFFA v. Harvard*, 600 U.S. at 230 ("[A]s all parties agree, nothing in this opinion should be construed as prohibiting universities from considering an applicant's discussion of how race affected his or her life."). Malley Decl. ¶ 15, App. 7; Bailey Decl. ¶ 17, App. 17. Perkins Coie has no intention of reverting to the prior requirement that an applicant be a member of a historically underrepresented group. Malley Decl. ¶ 14, App. 7. In light of these material changes, Member A's race presents no barrier to his application, eligibility, or selection.

AAER will no doubt claim that this dispute remains live because "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (quotation marks omitted). But when "subsequent events ma[ke] it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur," the voluntary-cessation exception does not apply. *Id.* (quotation marks omitted). The facts bear out

that voluntary cessation is no barrier to mootness here. Perkins Coie formally replaced its diversity fellowship programs based on a recommendation from the firm's Management Committee, which is charged with firm oversight and management of day-to-day operations, and a unanimous vote by its Executive Committee, which has full authority to govern the firm's affairs, including authority to establish firm policies. Malley Decl. ¶¶ 5-6, 10-11, App. 5-6. The final decision was the product of a months-long effort begun before AAER filed this lawsuit. *Id*. ¶¶ 8-9, App. 6; Bailey Decl. ¶ 15, App. 16. And it is not a temporary measure. Perkins Coie has no intention of reinstituting the targeted criterion or considering race except as contemplated by *SFFA* and will shortly begin accepting and considering applications from its first group of students under the new program. Malley Decl. ¶¶ 14-15, App. 7; Program Description at 1, App. 9; *see United States v. Realty Multi-List, Inc*., 629 F.2d 1351, 1388 (5th Cir. 1980). There is no evidence whatsoever— and substantial evidence to the contrary—that Perkins Coie intends to revert absent court order.

This change also defeats AAER's motion for a separate reason: AAER cannot demonstrate that it will suffer *any* harm, let alone irreparable harm, absent a preliminary injunction. Nor can AAER demonstrate that an injunction would serve the public interest. Even where "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice," it nonetheless can make a preliminary injunction unnecessary. *City of Austin v. Kinder Morgan Tex. Pipeline, LLC*, 447 F. Supp. 3d 558, 569-70 (W.D. Tex. 2020) (quotation marks omitted). AAER claims irreparable injury to the organization, its members, and the public based on the race-related criterion, Br. 7-8, but Perkins Coie has already eliminated that criterion. Accordingly, AAER cannot make the showing necessary for this extraordinary relief, particularly given that preliminary injunctive relief is available for a

workplace discrimination claim only in "truly extraordinary circumstances." *Conlay v. Baylor Coll. of Med.*, No. H-08-CV-1038, 2010 WL 774162, at *5 (S.D. Tex. Mar. 3, 2010).

The cases AAER cites about irreparable harm are readily distinguishable. None seek to enjoin defunct programs, and most do not involve preliminary injunctions at all, much less ones based on § 1981 workplace claims. Br. 7; *see Adarand*, 515 U.S. 200 (involving summary judgment ruling and alleged violations of Equal Protection Clause); *Gen. Contractors of Am.*, 508 U.S. 656 (same); *Coal. for Equity & Excellence in Md. Higher Educ. v. Md. Higher Educ. Comm'n*, 295 F. Supp. 3d 540 (D. Md. 2017) (involving post-trial challenge and alleged violations of Equal Protection Clause and Title VI); *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 4 (D.C. Cir. 2016) (involving alleged violations of National Voter Registration Act). What is more, the financial and professional benefits Member A would purportedly lose are the same type of injuries alleged in thousands of workplace discrimination cases filed in federal court each year. *See* Br. 5, 7-8. If AAER ultimately were to prevail in this litigation on Member A's behalf, Member A could seek the same types of remedies used to make plaintiffs whole in those types of cases. There is simply no reason Member A—unlike virtually all other employment discrimination plaintiffs—deserves extraordinary relief, particularly when he is eligible to apply for the new fellowship.

III.   **AAER Is Not Entitled To A Preliminary Injunction Because The Prior Fellowships Complied With Applicable Law.**

Founded over a century ago by a former U.S. District Court Judge and former U.S. Attorney, Perkins Coie has always held itself to the highest legal and ethical standards. Consistent with that principle, Perkins Coie's now-replaced, prior diversity fellowships complied with all legal standards. If this Court were to assess AAER's likelihood of success on the merits of its § 1981 claim—an analysis that is unnecessary for all the reasons provided above—it would find

AAER cannot meet its burden: voluntary affirmative action plans like the former fellowships are lawful.

Section 1981, enacted by Congress during the Reconstruction Era, gave formerly enslaved people the same rights to make and enforce contracts as are "enjoyed by white citizens." Courts have interpreted § 1981 consistently with Title VII to permit voluntary affirmative action programs that advance the purposes of these critical civil rights statutes. *See, e.g.*, *Setser v. Novack Inv. Co.*, 657 F.2d 962, 966-67 (8th Cir. 1981); *Doe v. Kamehameha Sch./Bernice Pauahi Bishop Est.*, 470 F.3d 827, 838-39 (9th Cir. 2006). "Discrimination claims brought under [§] 1981 … are evaluated under Title VII's analytical framework." *Hoang v. Microsemi Corp.*, No. 22-20004, 2023 WL 2346244, at *2 (5th Cir. Mar. 3, 2023); *see also, e.g.*, *Edmonson v. U.S. Steel Corp.*, 659 F.2d 582 (5th Cir. 1981) (applying Title VII's framework and dismissing § 1981 challenge); *Golatt v. Perot Museum of Nature & Sci.*, No. 20-CV-03397-L, __ F. Supp. 3d __, 2023 WL 2354917, at *2 & n.2 (N.D. Tex. Mar. 3, 2023) (Lindsay, J.) (same). Accordingly, an employer can rebut a *prima facie* case of intentional discrimination under § 1981 by asserting a voluntary affirmative action plan as the legitimate and non-discriminatory reason for its actions. That plan must: (1) address a manifest imbalance in a traditionally segregated job category; (2) not unnecessarily trammel the rights of non-minorities or impose an absolute bar to their advancement; and (3) have a duration linked to the permissible goal of attaining racial balance. *See Dallas Fire Fighters Ass'n v. City of Dallas*, 150 F.3d 438, 442 (5th Cir. 1998); *Sharkey v. Dixie Elec. Membership Corp.*, 262 F. App'x 598, 604 (5th Cir. 2008). The prior fellowship programs met those requirements, and AAER has not, and cannot, establish a substantial likelihood to the contrary.

*First*, Perkins Coie adopted its diversity fellowship programs to remedy manifest racial and ethnic imbalances. Bailey Decl. ¶¶ 8-10, App. 15. Perkins Coie does not "bear the burden of

explaining the manifest imbalance, it must merely show that one exists" by comparing the "percentage of minorities in [its] workforce with the percentage of qualified minorities in the appropriate labor market." *Dallas Fire Fighters Ass'n v. City of Dallas*, 885 F. Supp. 915, 924-25 (N.D. Tex. 1995); *see also Edwards v. City of Houston*, 37 F.3d 1097, 1111 (5th Cir. 1994) (courts should consider "minorities in the labor force who possess the relevant qualifications" in relation to the historical imbalance the employer seeks to remedy), *overruled on other grounds on reh'g en banc*, 78 F.3d 983 (5th Cir. 1996).

Historical racial imbalance in the legal profession is stark. In 1991, when Perkins Coie launched its 1L diversity program, racial and ethnic "minorities" were vastly underrepresented in attorney positions at law firms: less than 7% of law firm associates and just over 2% percent of law firm partners were people of color. Bailey Decl. ¶ 6, App. 14. Perkins Coie's 1L diversity program was designed to increase the representation of racially diverse lawyers at the firm. *Id.* ¶ 8, App. 15. It built on the growing representation of racially diverse law school students, the relevant labor market. Hiring a diverse group of summer associates created a pipeline of a diverse group of attorneys who, after law school graduation, might decide to rejoin Perkins Coie as associates. *Id.* ¶ 9, App. 15. The programs helped Perkins Coie make notable strides in diversifying its attorney ranks. *Id.* ¶ 14, App. 16. But the manifest imbalance persists today: as just one example, only 5% of the firm's attorneys are Black, compared to 8.7% of law school graduates. *Id.* ¶ 7, App. 14-15.

*Second*, the progress Perkins Coie has made has not come at the expense of white attorneys, nor has it unnecessarily trammeled their interests. The fellowships did not "require the discharge of white workers and their replacement by new black hires," nor did they "create an absolute bar to the advancement of white employees." *United Steelworkers of Am., AFL-CIO-CLC v. Weber*, 443 U.S. 193, 208-09 (1979) (citation omitted). Moreover, "similar positions" always remained

available to non-minorities. *Sharke*y, 262 F. App'x at 606-07. The fellowships were only one component of Perkins Coie's summer associate program, and law school graduates have opportunities to join the firm without participating in the summer associate program at all. Monin Decl. ¶¶ 3-5, App. 19-20. In other words, individuals like Member A had and have many different avenues to seek employment at the firm if interested in doing so.

*Third*, the prior fellowship programs could not have had a duration that outlasted their purpose, given that Perkins Coie ended those programs and introduced the new fellowship program *before* eliminating the racial imbalance between its workforce and the relevant labor pool. *See supra* at 6-7, 24.

AAER's insistence that employers like Perkins Coie can never consider race might reflect its view of what it wishes the law to be. It does not, however, reflect what the law is. Decades of precedent affirm that Perkins Coie could consider race in a targeted way to reverse the legacy of race discrimination and unlock the promise of equality animating civil rights statutes like § 1981. The Supreme Court has roundly rejected the claim AAER advances here that these laws prohibit *any* consideration of race whatsoever, *see* Br. 8, and it would be ironic "if a law triggered by a Nation's concern over centuries of racial injustice and intended to improve the lot of those who had 'been excluded from the American dream for so long,' constituted the first legislative prohibition of all voluntary, private, race-conscious efforts to abolish traditional patterns of racial segregation and hierarchy." *Weber*, 443 U.S. at 204.

## <u>CONCLUSION</u>

AAER's motion for a preliminary injunction should be denied.

Dated: October 9, 2023

Respectfully submitted,

/s/ *Jared D. Eisenberg*

Ishan K. Bhabha*
DC Bar No. 1015673
ibhabha@jenner.com
Lauren J. Hartz*
DC Bar No. 1029864
lhartz@jenner.com
Marcus A. R. Childress*
DC Bar No. 155843
mchildress@jenner.com
Erica Turret*
DC Bar No. 1735511
eturret@jenner.com
JENNER & BLOCK LLP
1099 New York Avenue, NW, Suite 900
Washington, DC 20001
Telephone: (202) 639-6000
Facsimile: (202) 639-6066

Jared D. Eisenberg
TX Bar No. 24092382
jeisenberg@lynnllp.com
Christopher J. Schwegmann
TX Bar No. 24051215
cschwegmann@lynnllp.com
Eric W. Pinker
TX Bar No. 16016550
epinker@lynnllp.com
LYNN PINKER HURST & SCHWEGMANN LLP
2100 Ross Avenue, Suite 2700
Dallas, TX 75201
Telephone: (214) 981-3800
Facsimile: (214) 981-3839

*Attorneys for Defendant Perkins Coie LLP*

Andrianna D. Kastanek*
IL Bar No. 6286554
akastanek@jenner.com
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654
Telephone: (312) 222-9350
Facsimile: (312) 527-0484

*Admitted *pro hac vice*

26

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief conforms to the requirements of Local Civil Rule 7.2. It has

been prepared in 12-point Times New Roman font and does not exceed 25 pages.


Dated: October 9, 2023

/s/ *Jared D. Eisenberg*
Jared D. Eisenberg
Lynn Pinker Hurst & Schwegmann LLP
2100 Ross Avenue, Suite 2700
Dallas, TX 75201
Telephone: (214) 981-3800
Facsimile: (214) 981-3839
jeisenberg@lynnllp.com

*Attorney for Defendant Perkins Coie LLP*

## CERTIFICATE OF SERVICE

I hereby certify that I have served this brief on all counsel of record through the Court's Electronic Document Filing System.

Dated: October 9, 2023

/s/ *Jared D. Eisenberg*
Jared D. Eisenberg
LYNN PINKER HURST & SCHWEGMANN LLP
2100 Ross Avenue, Suite 2700
Dallas, TX 75201
Telephone: (214) 981-3800
Facsimile: (214) 981-3839
jeisenberg@lynnllp.com

*Attorney for Defendant Perkins Coie LLP*